District, I want to thank you for the opportunity for the oral argument. I'd like to reserve five minutes for rebuttal. This appeal is not about a hair code. This appeal today, right now, is about the Texas Religious Freedom Restoration Act and section 110.006 and the jurisdictional issues involved in that part of the law. Specifically, the fact that in order to bring suit for a claim under TERFRA, you are required to give 60 days written notice via certified mail by return receipt requested. And the plaintiffs did not do that, and the trial court recognized they did not do that. There is one exception for when you don't have to give the 60 days notice by return receipt requested certified mail. I'll get to that in just a moment, as well as the immunity issues, but there are a couple of quick facts that are really important to set the stage for that. The plaintiffs have been enrolled at Mathis Independent School District since they were in kindergarten. The school district allowed them to be educated, even though they had a braid that exceeded the requirement, which was a hair code that says you can't have hair past your collar. They allowed them because it's a fundamental right to be educated. There was the extracurricular activities that is an issue because the handbook specifically says you also have to follow the hair code, and they said because that's not a fundamental right, participating in extracurricular activities, that in order for them to participate, they would have to do that. So that led to, in January of 2017, C.G. wanting to play football and making the claim that he should be allowed to participate. And so he and a lawyer, on his behalf in this case, filed a letter with the school district protesting the religious issue. They also filed a grievance in August of 2017. In September and November of 2017, the school district denied that grievance. It was on appeal and went to the second stage in November. In December, D.G., the second child, who also had a braid, on December 1st of that year, he was told he couldn't participate in extracurricular activities. The lawsuit was filed in January, January 9th of 2018. And so in order for them to qualify for the exception, they'd have to show that there was some imminent event that prevented them from writing the letter via certified mail return receipt request. Well, for C.G., he wrote a letter in August, so he clearly had time to do it via certified mail. As far as D.G., he didn't actually join the suit in January. He joined the suit in March. And so clearly, if on December 1st, as he is admitted and the trial court acknowledged, he had notice as of December 1st, he had 60 days before he joined the suit to send a letter via certified mail return receipt request. He didn't do that. And so according to the statute, that is a prerequisite, and that's where the jurisdiction lies. No court can have jurisdiction if that letter was not sent or it wasn't an imminent event. Now, this court previously has looked at this issue. You did so in Morgan v. Plano ISD. And while none of you on the panel were actually on that case, I'm sure you've heard about it because it's the famous candy cane case that's been before this court multiple times. It was first filed in 2003. And when it was filed in 2003, one of the claims was under terrifra, the fact that the child wanted to bring his candy cane pens to a party and was told he couldn't. And they said, well, we didn't have 60 days. It was imminent. And this court said, no, you had 60 days. You could have sent the letter via certified mail, and you didn't. Now, when this court made its ruling, it was very interesting because it didn't decide this until 2013. Ten years later, the terrifra issue, even though the suit was filed in 2003. Now, what's interesting about it was this court analyzed Texas Government Code 311.034, which was a new law in 2005 that specifically said that if the statute requires pre-suit notice of governmental entity, that that is a jurisdictional issue. This court said, even though that wasn't even the law in 2003, we believe that that was the law, just not in statutory form, and we agree with that law. And therefore, we're going to dismiss the case under terrifra because the person didn't send a certified mail return receipt request letter. Let me interrupt and ask a question. Where are these children right now? Are they still in school? Yes, they're in Mathis Independent School District enrolled and attending, well, attending virtually at this time. Okay. So they're juniors, seniors? Where are they in the process? I want to say, and I may be wrong, I want to say that the one child is, the older child is a sophomore, but he may be going into his sophomore year, and the other child is about a year behind. Okay. Thank you. So what happened was, the Texas legislature, after Plano versus, Morgan versus Plano ISD, had the opportunity to say, no, that's not what we meant, this circuit. We didn't believe that 311.034 meant that you had to follow that pre-suit notice, but the legislature didn't do that. They also didn't look at the decision in Plano and say, wait a minute, we didn't really mean that you have to send it by certified mail. They did nothing to change the law. And in fact, in my brief, I cite the legislative history where they added the provision of certified mail late in the process of creating the law. So they really meant that to mean something, that they wanted by certified mail return receipt request. Now, what was interesting about the Plano case is, they cited Myers versus Texas, which is the case that the plaintiffs rely on in this case, over the 11th Amendment immunity. Counselor, I have a quick question for you if you'd like, sir. My question has to do with the statutory prerequisite being jurisdictional, and in what sense they are. And I read the public decision saying only in that they are a condition for the act's waiver of immunity from suit. What do you say that means? Well, what this court has said it means is that while there is a waiver of immunity to suit, there is not a waiver of immunity liability. If you were to ask me personally, with all due respect to the previous Fifth Circuit decision, I think it's a prerequisite to any court getting jurisdiction is that you have to first send the notice, the pre-suit notice. And what that does is, by sending the pre-suit notice, it knocks out all immunity claims, because the statute says that you have immunity unless you send the letter. Have I responded to your question adequately? Yes. The Texas Supreme Court has grabbed that statute to mean that it's jurisdictional only in the sense that, as the legislature has directed, that's the way it should be with regard to the immunity, the state immunity for the city itself. And I don't know whether you agree or disagree with that phrase that's there. If it's a waiver only of immunity, then you start there? You have to give some meaning to that language. Absolutely, Your Honor. And I believe that what this court said in Morgan v. Plano was that the meaning is that there's either immunity – it was immunity from suit and immunity from liability, but because of the Myers case, Myers v. Texas, they said, we're not sure we can give you immunity from suit, but we are giving you immunity from liability, and we're dismissing the terrific claim. Now, the Myers case is based on the Lapidus case, Lapidus v. Georgia, and that's all about 11th Amendment immunity, which we've never claimed. We don't have 11th Amendment immunity. The Texas Supreme Court specifically said in San Antonio ISD v. McKinney that public school districts in Texas don't enjoy 11th Amendment immunity. So that's a red herring. We've never tried to establish 11th Amendment immunity, and the Lapidus case and the Myers case both say that, well, when you remove the case – I'm sorry, Judge, it looks like you're speaking, but I – What is the source of your immunity? I'm sorry, that's my error. Our immunity is – well, we have state immunity, all-court immunity in schools in Texas. You have immunity independent of the left, by the looks of it. Is that your argument? Well, we have the court immunity, we have governmental immunity just in general, and we have, arguably, the immunity that's set out in TERFRA that specifically says that you have the immunity unless it's waived because they've filed the proper pre-suit notice. I understand. Of course, the issue that's presented is the waiver, rather than the decisions that follow that. The waiver is effective by removal to federal court. Yes, Your Honor, and – I'm sorry, am I interrupting someone else? Okay. I'm sorry, because I can't see all of you on the screen, so I don't know when you're speaking, necessarily. I don't mean to be rude. No, we're in the one-word state area, so we're even. All right. Well, the immunity issue of removal is inapplicable here, because if you look at Lapidus v. Georgia and Myers, the issue was in Georgia, they removed the case because they didn't have immunity in state court. They went to federal court to create new immunity through the 11th Amendment, and the court said, wait a minute, you can't put yourself in a better position by going to federal court. But in this case, no court has jurisdiction. The state court wouldn't have it. Well, Judge Dennis' opinion would follow that much further than the Supreme Court's decision in Lapidus itself. In the Georgia case, Lapidus, there was – the state had consented to sort liability, and that was an immediate issue to address. However, Judge Dennis' opinion for our court, he took the next step and said that there could be a waiver regardless of the consent or the not consent. So that's the issue that I had, and I want to see it not closed. Well, and, Your Honor, I believe that in the Myers case, the court said that while there may not be immunity from suit, there is still immunity from liability. The court did distinguish between the two, and that's why in Plano, the Morgan case, the court of appeals said that, okay, assuming there is no immunity from suit, you still have to dismiss Tariffra because there's immunity from liability. You don't lose both. That's what the state said. That was the case removed. In this case? Yes. Oh, in this case, it was removed for multiple reasons. Reason number one is because they raised First Amendment and equal protection, and we felt it was better to have those issues argued in front of a federal judge as opposed to a state judge because they were federal claims. The second reason was because they took advantage of going immediately to state court and there wasn't enough time to be able to make the arguments and get into court and brief it before a restraining order, and so we took it to federal court for that reason. Mr. Eicheldom, is there any merit in possibly, when you're looking at the suit written notice requirement and whether that has any sort of lasting jurisdictional force after the district has waived the 11th Amendment immunity by removing the federal court, is there any merit in possibly signifying that question to the Supreme Court of Texas? I can't say that we've considered doing that, but my assumption would be that they would agree with us. If that's what the court is considering doing, I'd rather you do that than rule against us, but I don't believe that it's necessary for you to do that. I think you've already taken this issue before, and there's been an opportunity for the Texas legislature, if they disagreed with you in Morgan v. Plano, but they didn't. They thought that that was exactly the right thing. They've had multiple opportunities to change the law if they thought that Plano was wrong in dismissing the case. And you can't prevent violence from being back in the essence, can you? I think in the Texas legislature you probably can because they're pretty active in— I'm sorry? I mean, measures go off the rails for any number of reasons in Austin. I can't disagree with you on that, Your Honor. I think my time is up. I don't know if you want me to respond further. You've got time for rebuttal. Thank you. Thank you. Mr. Young? Thank you, Your Honors. My name is Kenneth Young, and I represent the Gonzalez family. This is an appeal of orders granting preliminary injunctions based on the Gonzalez family's TRIPRA claim. These orders enjoin Mathis Independent School District from excluding the Gonzalez boys to freshmen, high school students, from participation in extracurricular activities based on a single lock of hair that the boys have kept uncut since infancy as a part of a religious promise to God in which the Gonzalez boys keep tucked in their shirts. The school district did not put forward any evidence before the district court in the hearing on the preliminary injunction regarding the sincerity of the religious beliefs of the Gonzalez boys, nor do they contest that on appeal here. They do not contest that the school district's grooming policy substantially burdens that sincerely held religious belief, nor do they contest that the school district does not have a compelling government interest in substantially burdening the sincerely held belief. Are your clients seeking damages in addition to injunctive relief? No. Just injunctive relief. Injunctive relief, and I think it would be attorney's fees related to the suit related to injunctive relief, but not damages. And y'all is not going to work this out amicably? Unfortunately not. Unfortunately, there's only so much wiggle room between being able to participate and not being able to participate. Instead, and I should also note because counsel for the school district mentioned sovereign immunity from liability. Sovereign immunity from liability is not an issue in this appeal. Sovereign immunity from liability, unlike sovereign immunity from suit, is not jurisdictional. It is governed by Texas state law, as this court noted in Cardi. And it can be waived. It's an affirmative defense. It must be waived in pleadings. It was not properly raised in this case, and that issue is before the district court at this time, but it's not properly on appeal here. But what I understand the appeal here is based on is a narrow, a late-raised jurisdictional technical argument relating to pre-suit notice under TRFRA. And even assuming that the school district is correct in that the Gonzalez family was required to provide pre-suit notice under TRFRA and that they failed to do so, assuming that that is correct, the school district's argument still fails because this court has previous precedent. Because the consequence of failure to provide pre-suit notice under TRFRA is that the school district retained its sovereign immunity from suit, not that it otherwise defeated this court's subject matter jurisdiction. And as is the case with sovereign immunity from suit, the school district could, after that point, otherwise waive its sovereign immunity from suit through its litigation conduct, which it did so through its removal of the TRFRA claim from state court to federal court. I'd like to first address in a little bit more detail the consequences of failure to provide pre-suit notice under TRFRA, and then following that to discuss very briefly how the school district waived its sovereign immunity from suit otherwise. In Morgan, this court considered the consequences of failure of pre-suit notice under TRFRA. In doing so, it analyzed TRFRA Section 110.6, which provides pre-suit notice, as well as Section 110.8, which provides a statutory waiver for sovereign immunity from suit, which was subject to the pre-suit notice in Section 6. It also analyzed Texas Government Code Section 311.34, which is entitled Waiver of Sovereign Immunity, in which the statute states that failure to pre-requisites of suit including pre-suit notice constitutes a personal violation. In analysis of those three statutes, the court held that the consequence of failure of pre-suit notice was simply that the school district retained its governmental or sovereign immunity from suit. This is important because, as this court noted in Myers, citing the U.S. Supreme Court in Schachter, sovereign immunity from suit is not something that automatically destroys this court's subject matter jurisdiction. Instead, it merely provides a government defendant with the legal power to maintain a pre-suit notice that it may raise or waive. In other words, here, the court need not decide whether or not the Gonzales family fits within the exception to pre-suit notice or fails to provide that, because even assuming that they didn't provide it, that just results in the fact that the school district retained sovereign immunity from suit, which unlike normal subject matter jurisdiction issues, doesn't automatically destroy this court's subject matter jurisdiction. Instead, it merely allows the school district to raise or consent to suit as it otherwise would with the sovereign immunity from suit. This interpretation is supported by the Texas Supreme Court's interpretation of Section 31134 in the context of other statutory claims against government units, including, I think, the case as well as most recently last week in the city of Nassau case, where as Judge Higginbotham noted, the Texas Supreme Court has interpreting Section 31134, as has held that it is a jurisdictional bar in the sense that the defendant may rely on sovereign immunity from suit. However, as I mentioned before, as this court has also held, sovereign immunity from suit can otherwise be waived. I'd like to stop there before I go and discuss why or how the school district waived its sovereign immunity from suit to see if the court had any questions about the consequences of failure of pre-suit notice. I would want your take on the certification question I asked Mr. Eichelbaum earlier. So I do believe that the Texas Supreme Court might have a different view on how the pre-suit notice requirement works in TRIFRA, considering that it's a fundamental right. And I think that it would be appropriate to certify that question. I don't believe that the court needs to reach that question here because even assuming, as I mentioned, that pre-suit notice was not met or that the Gonzalez family did not fit within the exception, in this case, the school district otherwise waived its sovereign immunity from suit through removal. Does that adequately answer your question? Where are we in this litigation today with regard to your contention about the time for notice? We did not begin to run until much later. Maybe that's when the football coach decided that the ball was on the corner tail or it shouldn't be playing football. And at that point, for the first time, you're saying not that we don't notice, but maybe extracurricular activities would be barred. And I'm not completely clear as to whether that makes a difference, except that both of us were only one ball. I apologize. I think my internet was a little funny. I missed the beginning of the question, but as I understand it, the question is whether or not the date in which the boys learned that the school policy was going to be applied generally to exclude them from all extracurricular activities applies to both CG and DG equally. Is that correct? My question was, as I read the briefs and the text, there was a dispute over when you received notice that the boys had gone all the way through school without any such restriction being imposed because of their hair. And what happened was that the focus came from the football coach where they started discussions again at that point. And you thought at that point that the only thing at issue was playing football, which in the practical sense, unless you had not been given notice, that there would be a bar of all extracurricular activities. That is correct. I believe that it does apply to both children. As the council for the school district mentioned, the kids have been aware of the grooming policy since before they started school, and they have raised it with the school district. And since kindergarten, they've received an exemption to be able to come to school. What they didn't understand and what wasn't told to them until much later when they reached the middle school, they were suddenly told by the football coach that they could not participate as CG could not participate in football. At the time they were going through the grievance process mentioned, they understood. And you can see from the letters back and forth that this applies to football and CG's participation in that. And you can see where practically that makes sense as well as, you know, if we're talking about what the compelling interest might be, if it were safety or something else regarding football, that's something that you can discuss. It wasn't until later in December, as the court found when DG who was participating in the science team was pulled out of his science team practice, provided a note that said he would no longer be able to participate in science team, math team, student council, any extracurricular activity because of his religious grade, that CG and DG both understood that this wasn't just football. And CG soon after that in December found out when he was not allowed to participate in the school band concert. And it was at that point that the court found that the Gonzales boys first had knowledge of how the school district was going to apply the student standards to exclude them from extracurriculars. Sure. Thank you. At what age do extracurriculars kick in at math and science team? The focus here has particularly been on UIL extracurricular activities. And I understand that they start in the middle school years. And so the first year that it became applicable is when CG was practicing with the football team and then was informed that he would not be getting a helmet and would not be allowed to participate. And it's around that same time in middle school that DG began participating in science team, math team, and student council. So it's your understanding that the restriction began to be enforced in relation to UIL extracurriculars but not as to non-UIL activities? So that is the line that's been drawn by the school district. I will note that there aren't really a lot of extracurriculars that you can participate in that are not UIL because what that would mean is so DG can participate in science team. He could go, but he cannot go to any of the meets. CG can take the athletics course, which he does, and he has gone since that time every day. And he does it, but then he has to sit down and watch everybody else participate because he will not be issued a helmet or pads and cannot participate in that. So it's a little bit of a false distinction to say, oh, well, it's just UIL extracurriculars because that's essentially the whole ball of UIL listening competitions would all be included in the exclusion. And so as I mentioned before, you know, the court need not reach this issue because the consequence of pre-suit notice is just that the school district retained sovereign immunity to this court held in Meyers. Benzing as this court held in Meyers this court adopted a waiver of removal rule, which is a bright line jurisdictional rule, which applies generally in all cases, which states that any government defendant who removes the claim from state court to federal court waived sovereign immunity from suit as a matter of law. And that adoption I know that the school district had mentioned the difference between claims that were waived in state court versus claims that were otherwise waived. I will notice as judge Higginbotham had mentioned, the Meyers court's reasoning goes well beyond simply the federal claims that issue there. And based on the reasoning in that case, and the concern regarding which the court adopted the waiver by removal rule, specifically that government defendants could use the tech tactical advantage of sovereign immunity to both invoke federal jurisdiction to continue to litigate the claim for which they invoked jurisdiction on the merit. And to the extent they lose on the merits, they can seek to avoid that adjudication on the merits by late raising sovereign immunity from suit. There seems to be, there are two different issues. I'm not clear why you say we can't get to the second one. The school district keeps saying this is not about 11th amendment jurisdiction. They don't have it, or 11th amendment immunity, they don't have it. They can see this court has subject matter jurisdiction, as I understand it. They're saying we have immunity from liability that we can raise in either state or federal court. Correct. I don't understand them to be saying that they have occasionally confusingly kind of gone back and forth between what they're really, whether or not they're talking about sovereign immunity as a suit or as a liability, they can't be talking about sovereign immunity as a liability because that is not jurisdictional. Sovereign immunity is from liability. It's a basis to dismiss the suit. In other words, it doesn't matter. We have jurisdiction. We can say under Texas law, assuming the Texas law is you have to give notice to waive immunity from liability. If we were to find that there was not proper notice, that would mean that the immunity from liability stays in place, right? And that's not a question of this court subject matter jurisdiction. That is correct. It's not a matter of this court subject matter jurisdiction. However, unlike sovereign immunity from suit sovereign immunity from liability, which is governed by Texas state law, as this court held in Cardi can be waived because it's an affirmative defense. What unlike what, what a school district would need to do is raise that as affirmative defense. Timely. If it does not do so, it waived sovereign immunity as liability. They did not raise sovereign immunity as the liability before the district court in the regarding the hearing for preliminary injunction. In this case, they didn't raise it. It was not pleaded as an affirmative defense. They late pleaded something that could be sovereign immunity from liability a year and a half after the deadline for answering Gonzalez family moved to strike that answer and have moved for summary judgment as to that affirmative defense in the district court. But that issue is not an issue in this appeal. The argument that the school district raised before the district court was jurisdictional. It was sovereign immunity as to suit, not as to liability. That issue is not before this court. The only issue before this court is the argument that they raised before the district court, which was sovereign immunity as to suit sovereign immunity as to suit was waived when they removed as a matter of this court's binding case law. As a result, the only thing that they could rely on is sovereign immunity as for liability, as you mentioned, but in order to raise that under Texas law, they must properly plead it as an affirmative defense. And if they do not do so, they waive it. They did not do so. They waived it. They did not raise it before the district court. And it is not an issue here on this appeal. I don't know if that answered your question. I understand your position. I was just trying to be clear of what you're arguing. So in, in conclusion, although the Gonzalez family relies on, or maintains that it fits within the exception to pre-suit notice in that it seeks injunctive relief, that it did not have knowledge sufficient enough to provide the pre-suit notice. And that the government action in excluding them from all extracurriculars was imminent. The court need not reach that issue or even reach whether or not pre-suit notice was given because the consequence of pre-suit notice not being properly provided is retention of sovereign immunity as to suit, which was otherwise waived under this court's case law through removal and sovereign immunity as to liability. It's not an issue in this appeal and was otherwise waived because of a failure to raise it as an affirmative. But that, unless there are any other questions from the court. Thank you counsel. We have your argument. Thank you, your honor. Mr. Dr. I'm baffled at how the council can say that they didn't have proper opportunity to file a letter 60 days before filing suit. They did file a letter. They just didn't do it by certified mail. They did it in August. And then they were told again in September and, and they even filed a grievance. So they knew to file a grievance over this, but they didn't know to file a letter via certified mail, return receipt requested. Had they filed either of those by certified mail, return receipt requested, we wouldn't be here today, but they didn't. And then they try to confuse it with DG by saying, well, he didn't know until December 1st, but DG didn't sue in January DG sue in March, sued in March. And so if DG didn't know until December 1st, then he had 60 days. Before he joined the suit to send it via certified mail. Now, what plaintiff's counsel didn't talk about at all is what was imminent, what facts are in the record that shows an imminent activity that they couldn't participate. Let's just take January 9th as the deadline. If January 9th is the deadline. Because that's when they filed suit. Let's say that's the first time they figured out, Oh, we, we should send a certified letter. What happened within the next 60 days, March 15th to stay between January 9th and March 15th. That was imminent. That would not require them to send a letter. And there's nothing in the record. There's nothing by the trial court that showed that there was something imminent that made an exception. Now I want to go back. If I could just as well, it's question. Previously to me about certifying. And I want to read the exact language of three 11.034. Cause it's really important. And I don't think you need to certify because of this statutory prerequisites to a suit include provisions of notice. Our jurisdictional requirements in all suits against governmental entities. That's exactly what we're talking about. This was a statutory prerequisite and you couldn't even file suit. If you didn't meet that prerequisite now, The other thing that's important to understand is, is that, you know, he keeps citing Myers as if Myers was a recent decision. Myers was around. It was issued in 2005. Morgan. Morgan versus Plano was 2013. It knew about Myers and still dismissed the terrific one. And so we're arguing that based upon that decision and justice. Someone, I think your question was exactly right. And in putting out our position. There is immunity from liability. And this court can dismiss the case based upon jurisdiction, a lack of jurisdiction. You can raise. Did you raise lack? Did you write the. Immunity from liability in the district court in the preliminary injunction proceedings. In the preliminary injunction proceeding, we just couched it as jurisdiction and that we had immunity. We didn't specify immunity from suit or immunity from liability. We didn't get down into the details and you have the transcript. You can see that we didn't get into the difference between the two. We simply said they didn't meet their burden, which is to file the pre-suit notice. 60 days and they didn't show anything imminent. And so the jurisdictional issue was all we argued before the court at that proceeding saying that before this court could have jurisdiction, you had to be able to show that they did the pre-suit requirement. So that was the position that we took there. The other thing I just want to mention is he keeps saying that the school district wave immunity. And I understand what Meyer says, but Texas state law is a school district can't wave its immunity. Only the legislature can. There is no action that the school district can do to waive its immunity unless it does so by contract. And that there's plenty of Texas Supreme court cases that say that including a buoy versus LaMesa and other cases. But we're getting a little field from the arguments here. But that would be my position with regard to that. The last thing I wanted to touch on in my minute or so that I have left is the question that you asked your honor about amicable. And it's not really an issue before the court, but I do want to address it because it's a reasonable question. And that is, is there an amicable way of resolving this? And the problem is with a pro Mesa, there is no amicable way of resolving it. A pro Mesa can be changed at any time. That's what the plaintiffs have said. So today it could be, I've made a promise to God that I'm going to have my hair long tomorrow. It could be, I made a promise to God. I'm allowed to chew gum and therefore you can't hold me responsible. And I'm allowed to chew gum. That seems to me that gets into the legitimacy of the promise. And I know this is really far field, but what in the world does the brain have to do with band practice and science? Why in the world would the school district say, if this is a truly deeply held religious belief, never, you know, forget it because of the band practice. That's a great question. And if you'll give me the time to explain the school district's position on this, I'm happy to do so. And it's not a lengthy position. It's simply that it's one thing to have a, an actual religious belief. They don't have a religious belief in having long hair. They have a religious belief in pro Mesa. And the distinction is as they have said, and testified to a pro Mesa can be made at any time. It could be changed at any time. It's a human lab. It's not a mutual ascent promise. And if, and they have testified that if I changed my pro Mesa, I could do that if I wanted to, but I don't want to. The problem for a school district is, and this is why every school district is interested in this case. The problem is, is that if you can just simply say, I made a promise to God not to follow this school rule, whatever that school rule is, how does the school district sit there and say, this is a sincerely held religious belief. This one isn't. I think you've told us enough. I just was curious. Thank you counsel. We really appreciate your efforts today. And I know it has not been perfect, but I think it was helpful. So this case will be under submission in the court, where we can be at 10 o'clock tomorrow morning. Thank you.